IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROBERT L. CARRILLO, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  SA-09-CA-44-XR |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of the Social § | |
| Security Administration § | |
| § | |
| *Defendant*. § | |
| § | |

**ORDER**

On this date, the Court considered the Report and Recommendation filed by the Magistrate Judge, and Plaintiff's objections thereto, concerning Plaintiff's appeal of the Commissioner's decision to deny him Social Security disability benefits. After careful consideration, the Court will accept the Magistrate Judge's recommendation to affirm the Commissioner's denial of benefits.

**I. Introduction**

Plaintiff Robert Carrillo seeks review and reversal of the administrative denial of his application for Disability Insurance Benefits (DIB). Carrillo asks the Court to reverse the decision and to render judgment in his favor. In the alternative, Carrillo asks the Court to reverse the decision and remand the case for additional administrative proceedings.

**II. Jurisdiction**

This Court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. § 405(g).

### III. Procedural Background

Carrillo fully exhausted his administrative remedies prior to filing this action in federal court. Carrillo filed an application for DIB on January 9, 2006, alleging disability beginning November 22, 2004. The Social Security Administration denied the application initially and on reconsideration. Carrillo then asked for a hearing. A hearing was held before Administrative Law Judge Jonathan P. Blucher on November 14, 2007. The ALJ issued a decision on March 25, 2008, concluding that Carrillo is not disabled within the meaning of the Social Security Act (the Act). The SSA Appeals Council concluded that no basis existed for review of the ALJ's decision. The ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).

Plaintiff filed a motion to proceed *in forma pauperis* in this matter on January 16, 2009, and following the grant of this motion, the complaint was filed on January 16, 2009. Defendant filed an answer on September 2, 2009, and the case was referred to Magistrate Judge John W. Primomo for a report and recommendation. Both parties filed briefs. On October 6, 2009, Magistrate Judge Primomo issued a report and recommendation to this Court recommending the decision of the ALJ be affirmed. Plaintiff filed objections to the report and recommendation on October 30, 2009. Where the Report and Recommendation has been objected to, the Court reviews the Magistrate Judge's recommendation disposition *de novo* pursuant to Federal Rules of Federal Procedure 72 and 28 U.S.C. § 636(b)(1).

### IV. Applicable Legal Standards.

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is

limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[1] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[3]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[4] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[5] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[6] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.

---

[1] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[2] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[3] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[4] *Martinez*, 64 F.3d at 173.

[5] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (the court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner).

[6] *Martinez*, 64 F.3d at 174.

**B. Entitlement to Benefits**

Every individual who is insured for disability benefits, has not reached retirement age, meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive disability insurance benefits.[7] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[8] A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[9]

**C. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner require disability claims to be evaluated by the prescribed five-step process.[10] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[11]

---

[7] 42 U.S.C. § 423(a)(1).

[8] 42 U.S.C. § 1382c(a)(3)(A).

[9] 42 U.S.C. § 1382c(a)(3)(B).

[10] 20 C.F.R. §§ 404.1520 and 416.920.

[11] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[12] If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience. The second step involves determining whether the claimant's impairment is severe. If a claimant has no severe impairments, the claimant is deemed not disabled. In the third step, the ALJ compares the severe impairment with those on a list of specific impairments. If a claimant's impairment meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.

If the impairment is not on the list, the ALJ, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work. If the claimant is still able to do his past work, the claimant is not disabled. If the claimant cannot perform his past work, the ALJ moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work. If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis. Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[13] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.

---

[12] 20 C.F.R. §§ 404.1520 and 416.920.

[13] *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

## V. Analysis

**A. Findings and Conclusions of the ALJ.**

ALJ Blucher held a hearing on November 14, 2007, at which Plaintiff appeared and testified, as did Donald Marth, an impartial vocational expert. The ALJ issued his report on March 25, 2008, finding that Plaintiff was not disabled. At the first step he found that Carrillo has not engaged in substantial gainful activity since November 22, 2004, the alleged onset date. At the second and third steps of the evaluation process, the ALJ determined, after reviewing the objective medical evidence, that Plaintiff has the following severe impairments: cervical, thoracic, and lumbar spine degenerative disc disease, and left knee abnormalities, including a medial meniscal tear and a discoid lateral meniscus with degenerative changes, but that these impairments do not, either singly or in combination, meet or equal a listed impairment. In reaching his conclusion, the ALJ found that the criteria of section 1.02A (major dysfunction of a joint) were not met because Plaintiff was not unable to ambulate effectively as defined in section 1.00B2b. He noted that Plaintiff's gait was normal. The ALJ also found that the criteria of section 1.04A (disorder of the spine) were not met, explaining that "the record does not document that the claimant has experienced motor and sensory or reflex functioning deficits accompanied by positive straight leg raising testing, both sitting and supine, for any period of 12 continuous [months] relevant to this decision." The ALJ acknowledged that Plaintiff's attorney cited a "single examination" that showed motor, sensory, and reflex functioning deficits as well as positive straight leg raising, but pointed out that the examination did not document positive straight leg raising, both sitting and supine, as required by the regulations to meet section 1.04A. He further noted that other examinations did not establish that these findings were present for a period of 12 continuous months. The ALJ also found that the criteria of section 12.04 (affective

disorders) were not met and that Plaintiff did not have a severe mental impairment.

At the fourth step of the evaluation process, the ALJ assessed Plaintiff's RFC and the demands of his past work. The ALJ discounted Plaintiff's subjective complaints of disabling symptoms and limitations, finding them to be "not entirely credible." He determined that Plaintiff retains the RFC to perform a limited range of sedentary and light work. Utilizing the testimony of a vocational expert, the ALJ found that Plaintiff was unable to perform his past relevant work but can perform other jobs which exist in significant numbers in the national economy, and thus he is not disabled.

**B. Plaintiff's allegations**

The Plaintiff asserts that: (1) the ALJ erred by failing to properly consider whether his impairments meet or equal Listing 1.04A or, in the alternative, whether his low back impairment when considered in combination with his significant knee injury equals the listing; (2) the ALJ improperly determined that he must prove that all of the Listing 1.04A elements "consistently show up in every medical record for 12 full months." Carrillo contends that the ALJ's disability determination was not supported by substantial evidence, and that the ALJ failed to apply the proper legal standards.

**C. Whether the ALJ erred in his step-three determination that Plaintiff did not meet or equal a listing in 20 C.F.R., Part 404, Subpart P, Appendix 1.**

Plaintiff argues that the ALJ failed to properly consider whether his impairments meet or equal Listing 1.04A. Plaintiff contends that he meets all of the elements of the listing or, in the alternative, his low back impairment when considered in combination with his significant knee injury

equals the listing.[14] Plaintiff asserts that the MRI finding of his knee (tear and grade II degenerative changes and fracture) is of equal significance.[15] Plaintiff further argues that while Dr. Earle found spinal stenosis at the level L5 and S1, he has abnormalities at other levels of his low back, namely L4-L5, and the listing elements all correlate to a spinal cord disorder at that level. Plaintiff states that the listing requisite of a positive straight leg raise test only applies to the L5 or S1 nerve root and it is impossible to meet Listing 1.04A for L4-L5 spinal cord disorders.[16] However, Plaintiff argues that his medical records "clearly show" that he equals the Listing 1.04A.[17] Plaintiff bears the burden of proving that his impairment meets or equals this listing.[18]

1. Whether Plaintiff meets Listing 1.04A

Plaintiff's impairment must meet all of the specified medical criteria in order for his impairment to match the listing.[19] Listing 1.04 is as follows:

> <u>Disorders of the spine</u> (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle

---

[14] Brief in Support of Plaintiff's Original Complaint at 9.

[15] Plaintiff's Objections to Report and Recommendation of United States Magistrate Judge at 2.

[16] *Id.* at 2.

[17] *Id.*

[18] *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (citing *Fraga v. Bowen*, 810 F.2d 1296 (5th Cir. 1987)).

[19] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

> weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[20]

In addition, the general listing information related to musculoskeletal disorders states:

> D. The physical examination must include a detailed description of the orthopedic, neurological, and other findings appropriate to the specific impairment being evaluated. These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g., "He says his leg is weak, numb." Alternative testing methods should be used to verify the abnormal findings; e.g., a seated straight-leg raising test in addition to a supine straight-leg raising test. Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation. Care must be taken to ascertain that the reported examination findings are consistent with the individual's daily activities.

> E. General. Examination of the spine should include a detailed description of gait, range of motion of the spine given quantitatively in degrees from the vertical position (zero degrees) or, for straight-leg raising from the sitting and supine position (zero degrees), any other appropriate tension signs, motor and sensory abnormalities, muscle spasm, when present, and deep tendon reflexes. Observations of the individual during the examination should be reported; e.g., how he gets on and off the examination table. Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss.

A claimant must provide medical findings that support all of the criteria for the Step 3 determination.

The ALJ found that the requirements of Listing 1.04A had not been met. Specifically, he stated that "[t]he record does not document that Plaintiff has experienced motor and sensory or reflex functioning deficits accompanied by positive straight leg raising testing, both sitting and supine, for any period of 12 continuous months relevant to the decision." Tr. 17. Plaintiff's attorney cited to one examination conducted by Dr. Earle in August 2005, which showed motor, sensory, and reflex functioning deficits as well as positive straight leg raising. Tr. 17. However, the ALJ concluded that the report did not prove that Plaintiff's back impairment met Listing 1.04A because it did not

---

[20] 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 1.04(A)

document positive straight leg raising, both sitting and supine, as required. Tr. 17. He further noted that other examinations did not prove that these findings were present for a period of 12 continuous months. Tr. 17. The ALJ noted that Plaintiff's motor and sensory function were normal at the time of his alleged onset in November 2004, that his lower extremity neurological examination on February 22, 2005 was normal and his straight leg raising was negative (despite MRI findings of abnormalities), a May 26, 2005 physical examination "showed that his motor, sensory, and reflex functioning remained intact," a September 16, 2005 examination showed "that his motor and reflex functioning remained intact in all extremities" and there was no spasm, a July 2005 treatment note reflected claimant had completed work hardening with "good results" and was "able to return to work earlier than anticipated" and could perform the demands of heavy exertion work, and a July 18, 2005 report showed he was released to work without restrictions. Tr. 18. The Court holds that substantial evidence supports the ALJ's determination that Plaintiff does not meet the requirements of Listing 1.04A.

  2. Whether Plaintiff's impairments equal Listing 1.04A

  If a claimant does not exhibit all of the requirements of a listed impairment, medical equivalence may be established by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Id.*; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (claimant must provide medical findings that support each of the criteria for the equivalent impairment evaluation); 20 C.F.R. § 404.1526 (medical findings must be at least equal

in severity and duration to the listed findings); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance). No matter how severe it may be, an impairment does not qualify if it exhibits only some of the specified criteria. *Sullivan*, 493 U.S. at 531. A claimant cannot qualify under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment. *Sullivan,* 493 U.S. at 531. Instead, the claimant must present medical findings equal in severity to every criterion in a listing. *Id.*

Plaintiff argues that his low back impairment, when considered in combination with his significant knee injury, equals the listing.[21] Specifically, he argues that his knee impairment was related causally to his sciatica, which is generally associated with positive straight leg raise testing.[22] The ALJ noted that an October 2005 MRI of the Plaintiff's left knee showed a tear of the meniscus and a discoid lateral meniscus with grade II degenerative change. Tr. 19. However, the ALJ pointed out that "he has not undergone surgical treatment of this condition during the time at issue or that surgical treatment has been prescribed or is contemplated by his physicians." Tr. 19. The ALJ noted that the symptoms of Plaintiff's condition are modest and intermittent in nature and amenable to management with the medications Plaintiff takes for his back condition. Tr. 19. The ALJ concluded that Plaintiff's knee condition, alone or in combination with his other impairments, does not preclude him from employment on a sustained basis. Tr. 19.

---

[21] Brief in Support of Plaintiff's Original Complaint at 9.

[22] Plaintiff's Objections to Report and Recommendation of United States Magistrate Judge at 2.

The Magistrate Judge noted that Carrillo did not cite to any specific evidence or present any argument establishing that the medical findings related to his knee impairment are at least of equal significance to the requirements of Listing 1.04A. The Magistrate Judge also noted that Plaintiff's ability to work in 2005 was noted by his chiropractors in July, August, and December.

The ALJ's decision at step three applies the correct legal standards and is supported by substantial evidence. The Court holds that there is substantial evidence to support the Commissioner's conclusion that Plaintiff does not meet or equal Listing 1.04 testing.[23]

---

[23] Plaintiff objects that, in his report and recommendation, the Magistrate Judge concluded that Plaintiff could not satisfy Listing 1.04A because the listing requires a showing of functional loss consistent with the inability to ambulate effectively. Courts are split on whether this is a requirement of Listing 1.04(A). *See Cedarburg v. Astrue*, Civ. A. No. 08-5129, 2009 WL 2951121 at *18 (D. Minn. Sept. 9, 2009) (listing cases):

> Some courts have taken the position that to meet or equal a Listing under the musculoskeletal category, including Listing 1.04(A), the claimant must also demonstrate that they cannot ambulate effectively. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007) (citing 20 C.F.R. 404, Subpt. P, App. 1, § 1.00(B)(2); 1.04(A)); *Worth v. Astrue*, No. 08-35104, 2009 WL 1396823 at *1 (9th Cir. May 20, 2009) (citing same); *Brown v. Astrue*, No. 4: 08-CV-483 CAS, 2009 WL 88049, *13 (E.D. Mo. Jan.12, 2009) (citing same). Other courts have determined that because Listing 1.04(A) does not explicitly list the requirement of an inability to ambulate (as opposed to, for example, 1.04(C) which does include the requirement), the ALJ does not address the ability to ambulate factor as it relates to 1.04(A). See, e.g., *Wilson v. Astrue*, No. 07-4142-JAR, 2008 WL 4826138 at *5 (D. Kan. Nov.05, 2008); *Franks v. Commissioner of Social Security*, No. C-1-06-810, 2008 WL 648719 at *6 n. 2 (S.D. Ohio March 10, 2008).

However, the ALJ did not include this requirement when evaluating whether Plaintiff meets or equals Listing 1.04(A). The Magistrate Judge's inclusion of this requirement is therefore not relevant, considering that this Court is engaging in *de novo* review of the Commissioner's decision. Accordingly, the Court need not decide whether inability to ambulate effectively is a required element of Listing 1.04(A).

**D. Whether the ALJ erred in determining that Plaintiff must prove that all of the Listing 1.04A elements existed for a continuous period of 12 months.**

Plaintiff argues that it is not necessary for him to prove that all of the Listing 1.04A elements "consistently show up in every medical record for 12 full months." Plaintiff contends that positive motor, sensory and straight leg raising test findings consistently show up in treatment records.

The applicable regulation states that the Social Security Administration will find that a claimant's impairment meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 404.1525 (c)(3). The Social Security Act defines disability as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A). If a claimant is unable to establish that the impairment existed for the requisite period of twelve months, he cannot carry his burden of meeting the requirements of the relevant listing.

The ALJ found that the record does not demonstrate that Plaintiff has experienced motor and sensory or reflex functioning deficits accompanied by positive straight leg raising testing, both sitting and supine, for any period of twelve continuous relevant months. Tr. 17. The ALJ stated that the worker's compensation status report dated July 18, 2005 showed that Plaintiff was released to work without restrictions. Tr. 18. In July 2005, Dr. Flood indicated that Plaintiff was able to return to work earlier than anticipated. In August and December 2005, Dr. Evans indicated that Plaintiff was able to return to work. The ALJ noted that Plaintiff was released back to his past relevant work as a maintenance mechanic, a heavy exertion job, considerably less than one year after the alleged onset

date of disability. Tr. 18. The contemporaneous functional capacity evaluation had demonstrated Plaintiff was capable of light work at that time. Tr. 19. "Given the modest amount and type of abnormal objective findings, his conservative course of treatment, his release to work consistent with the demands of sustained sedentary and light exertion less than a year after the alleged onset date of disability, and his reported daily activities which suggest he retains substantial physical abilities" the ALJ concluded that Plaintiffs' allegations of a disabling back and neck condition were exaggerated. Tr. 19. Though some pieces of medical evidence may show that Plaintiff sometimes experienced symptoms required to meet the listing, there is also evidence that Plaintiff sometimes did not, and that he was able to work. "This is sufficient evidence from which a reasonable person could conclude that the symptoms which might show that Listing 1.04A was met did not exist for a 12-month period." *Black v. Astrue*, Civ. A. No. 2:08cv392, 2009 WL 3617283 (S.D. Ind. Oct. 28, 2009).

As the Magistrate Judge pointed out, the Commissioner explicitly set the medical criteria defining the listing level impairments at a higher level of severity than the statutory standard. *See Zebley*, 493 U.S. at 532. The reason for the difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. *Id.* Thus, if a claimant cannot meet his burden at the listing level, he retains the opportunity of proving that, in light of his RFC, he is unable to return to his past relevant work. Instead, claimant has focused solely on the third step of the evaluation process, at which he carries the burden of proof. Thus, the Court agrees with the Magistrate Judge that substantial evidence supports the Commissioner's decision.

**Conclusion**

For the foregoing reasons, the recommendation of the Magistrate Judge is accepted and the decision of the Commissioner to deny disability benefits is AFFIRMED. Plaintiff Robert Carrillo's petition to have the Commissioner's decision reversed and/or remanded is DENIED. The Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 26th day of May, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE